ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
PAUL J. GELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com

LABATON SUCHAROW LLP                    EDELSON PC
JOEL H. BERNSTEIN                        JAY EDELSON
140 Broadway, 34th Floor                 350 North LaSalle Street, 13th Floor
New York, NY  10005                      Chicago, IL  60654
Telephone:  212/907-0700                 Telephone:  312/589-6370
212/818-0477 (fax)                       312/589-6378 (fax)
jbernstein@labaton.com                   jedelson@edelson.com

Interim Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CARLO LICATA, ADAM PEZEN and NIMESH PATEL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No. 3:15-cv-03748-MEJ <br><br> CONSOLIDATED CLASS ACTION COMPLAINT <br><br> *Consolidated with: Nos. 3:15-cv-03749 and 3:15-cv-03747* <br><br><br> DEMAND FOR JURY TRIAL |

1070297_1

**CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs Adam Pezen, Carlo Licata, and Nimesh Patel bring this Consolidated Class Action Complaint ("Complaint") against Defendant Facebook, Inc. ("Facebook") to put a stop to its surreptitious collection, use, and storage of Plaintiffs' and the proposed Class's sensitive biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**NATURE OF THE ACTION**

1. Defendant Facebook operates the largest social network in the world, with over one billion active users.

2. Facebook users can use its platform to, among other things, upload and share photographs with friends and relatives. Once a user uploads a photograph on Facebook, the user can "tag" (*i.e.*, identify by name) other Facebook users and non-users who appear in the photograph.

3. To encourage use of the tagging feature, Facebook launched a program in 2010 called "Tag Suggestions." Tag Suggestions functions by scanning photographs uploaded by the user and then identifying faces appearing in those photographs. If Tag Suggestions recognizes and identifies one of the faces appearing in the photograph, Facebook will suggest that individual's name or automatically tag them.

4. Facebook conceals that Tag Suggestions uses proprietary facial recognition software to extract from user-uploaded photographs the unique biometric identifiers (*i.e.*, graphical representations of facial features, also known as facial geometry) associated with people's faces and identify who they are. Facebook does not disclose its biometrics data collection to its users, nor does it even ask users to acknowledge, let alone consent to, these practices.

5. Through these practices, Facebook not only disregards its users' privacy rights; it also violates the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* (the "BIPA"), which was specifically designed to protect Illinois residents from practices like Facebook's. In particular, Facebook violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiffs or the Class in writing that their biometric identifiers (face geometry) were being generated, collected or stored;

- Properly inform Plaintiffs or the Class in writing of the specific purpose and length of time for which their biometric identifiers were being collected, stored, and used;

- Provide a publicly available retention schedule and guidelines for permanently destroying the biometric identifiers of Plaintiffs and the Class (who do not opt-out of "Tag Suggestions"); and

- Receive a written release from Plaintiffs or the Class to collect, capture, or otherwise obtain their biometric identifiers.

6. Accordingly, this Complaint seeks an order: (i) declaring that Facebook's conduct violates the BIPA; (ii) requiring Facebook to cease the unlawful activities discussed herein; and (iii) awarding statutory damages to Plaintiffs and the proposed Class.

**PARTIES**

7. Plaintiff Adam Pezen ("Pezen") is a natural person and Facebook user. Plaintiff is a resident and citizen of the State of Illinois.

8. Plaintiff Carlo Licata ("Licata") is a natural person and Facebook user. Plaintiff is a resident and citizen of the State of Illinois.

9. Plaintiff Nimesh Patel ("Patel") is a natural person and Facebook user. Plaintiff is a resident and citizen of the State of Illinois.

10. Defendant Facebook, Inc. is a Delaware corporation with its principal executive offices and corporate headquarters located at 1601 Willow Road, Menlo Park, California 94025. Facebook is a citizen of the States of Delaware and California. Facebook is also registered to conduct business in the State of Illinois (file number 66267067) and maintains an office in Cook County, Illinois. Facebook conducts business throughout this District, the State of Illinois, the State of California, and the United States.

**JURISDICTION AND VENUE**

11. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because: (i) the proposed Class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed Class, including Plaintiffs, are

citizens of a state different from Defendant's home state; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

12. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant Facebook because Defendant has submitted to this Court's jurisdiction and has its corporate headquarters in Menlo Park, California.

13. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant maintains its corporate headquarters and principal place of business in this District.

**INTRADISTRICT ASSIGNMENT**

14. Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San Francisco Division.

**FACTUAL BACKGROUND**

**I.   Biometrics and Consumer Privacy**

15. "Biometrics" refers to technologies used to identify an individual based on unique physical characteristics. Common biometric identifiers include retina or iris scans, fingerprints, or hand or face geometry scans, which are all generally obtained by first acquiring an image or photograph of the biometric identifier. One of the most prevalent uses of biometrics is facial recognition technology, which works by scanning an image for human faces, extracting facial feature data from a photograph or image of a human face, generating a "faceprint" from the image through the use of facial-recognition algorithms, and then comparing, or "matching," the resultant faceprint to other faceprints stored in a "faceprint database." If a database match is found, a person may be identified.

16. The recent sophistication of facial recognition software has generated many commercial applications of the technology, but also raised serious privacy concerns about its massive scale, scope, and surreptitiousness.[1] During a 2012 U.S. Senate hearing, Senator Al Franken

---

[1] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy Tech & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012) (statement of Jennifer Lynch, Staff Attorney, Electronic Frontier Foundation), *available at* https://www.eff.org/files/filenode/jenniferlynch_eff-senate-testimony-face_recognition.pdf.

noted that someone armed with a faceprint can find that person's "name . . . social networking account and . . . can find and track [them] in the street, in the stores [they] visit, the government buildings [they] enter, and the photos [their] friends post online."[2] Faceprints can even be used to identify protesters from afar and then "target them for selective jailing and prosecution."[3]

17. Unlike other identifiers such as Social Security or credit card numbers, which can be changed if compromised or stolen, biometric identifiers linked to a specific voice or face cannot. These unique and permanent biometric identifiers, once exposed, leave victims with no means to prevent identity theft and unauthorized tracking. Recognizing this, the Federal Trade Commission urged companies using facial recognition technology to ask for consent *before* ever scanning and extracting biometric data from their digital photographs.[4] Facebook has deliberately ignored this prevailing view, which is expressly required under the BIPA, failed to obtain user consent before launching its wide-spread facial recognition program, and continues to violate millions of Illinois residents' legal privacy rights.

## II. Illinois's Biometric Information Privacy Act

18. The BIPA was enacted in 2008. Under the BIPA, companies may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier . . . unless it first:

> (1) informs the subject . . . in writing that a biometric identifier . . . is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier . . . ."

740 ILCS 14/15(b).

---

[2] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy Tech & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012) (statement of Sen. Al Franken, Chairman, Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary), *available at* http://www.franken.senate.gov/?p=press_release&id=2144.

[3] *Id.*

[4] *See Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade Commission (Oct. 2012), *available at* http://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf.

19. The statute defines "biometric identifier" to include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."  740 ILCS 14/10.

20. The BIPA also regulates how companies must handle Illinois residents' biometric data. *See, e.g.*, 740 ILCS 14/15(c)–(d). For instance, the BIPA prohibits selling, leasing, trading, or otherwise profiting from a person's biometric data, 740 ILCS 14/15(c), and requires that companies develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric data when the initial purpose for collecting such data has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

### III. Facebook Violates the Biometric Information Privacy Act

21. In 2010, Facebook launched a program called "Tag Suggestions," which claimed to "automate the process of identifying and, if the user chooses, tagging friends in the photos he or she uploads."[5]

22. Unbeknownst to the public, Tag Suggestions relies on state-of-the-art facial recognition technology to extract biometric identifiers from user-uploaded photographs in order to determine who the people in the photographs are. Figure 1 below shows an example of what Tag Suggestions looks like to a Facebook user.

---

[5] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012) (statement of Robert Sherman, Manager of Privacy and Public Policy, Facebook, Inc.), *available at* http://www.judiciary.senate.gov/imo/media/doc/12-7-18ShermanTestimony.pdf.



(**Fig. 1.**)

23. Facebook uses facial recognition software to extract biometric data from user-uploaded photographs through the use of an algorithm that calculates a unique digital representation of the face (which it calls a "template") based on geometric relationship of their facial features, like the distance between their eyes, nose and ears.

24. "Template" data (or, alternatively, faceprint data) stored by Facebook is a form of a biometric identifier extracted from the image of a person's face (*i.e.*, including information about the geometry of their face). (*See* Figure 2, showing an example of geometric data points of a human face.)



(**Fig. 2.**)

25. The process for creating image-based biometric identifiers (including those Facebook collects) is largely the same. In each case, an algorithm is used to calculate an individual's unique physical characteristics, which results in a biometric template that is separate and distinct from the image from which it was created.

26. Without even informing its users – let alone obtaining their informed written consent – Facebook through Tag Suggestions automatically enrolled them into its facial recognition program and extracted biometric identifiers from their uploaded photographs and previously tagged pictures, and stored these biometric identifiers in a database.

27. Because Facebook users were only allowed to opt out of the program *after the fact* (and even then, only if they knew to look for the opt-out mechanism), Facebook users unwittingly had their biometric identifiers extracted from photographs and then stored – a practice that continues to this day.

**A. Facebook Never Requires Users to Acknowledge Its Biometric Data Collection Practices, Never Obtains Their Express Written Consent to Collect the Same, and, Instead, Hides the Fact that It Systematically Collects Users' Biometrics**

28. Since Tag Suggestions debuted in 2010, Facebook has been intentionally elusive in explaining how the technology works. First, Facebook does not directly inform users that it collects, captures, and obtains faceprints from users. In fact, even though Tag Suggestions has been in use for five years, Facebook still does not require users to acknowledge its collection of their biometric data,

much less obtain a written release from them before collecting their faceprints. Instead, Facebook markets Tag Suggestions as a convenience feature, often with advertisements under the heading "Photos are better with friends." And nothing in those seemingly innocuous advertisements gives any indication that use of the feature would come at the cost of users' biometric privacy rights.[6]

29.  Second, Facebook's Tag Suggestions are an opt-out (not an opt-in) program, so by default all users are automatically signed up. Facebook makes it difficult to opt out: In fact, since the Tag Suggestions feature was rolled out, Facebook has kept its biometrics data collection practices out of its privacy policies and has instead placed ambiguous statements about the true nature of its Tag Suggestions program on remote sections of its website (such as in its "Help Center" or the now defunct "Notes" sections). Uncovering these remote sections not only requires a user to know about Tag Suggestions in the first place, but also requires them to affirmatively seek out more information through multiple layers of additional pages.

30.  Third, and compounding that problem and its violation of the BIPA, Facebook's website does not have a written, publicly available policy identifying its biometrics retention schedule, nor guidelines for permanently destroying users' (who do not opt-out of "Tag Suggestions") biometric identifiers when they are no longer needed.

31.  By and through these actions, Facebook not only disregarded Plaintiffs and the Class's privacy rights, but it also violated their statutorily protected rights under BIPA to control the collection, use, and storage of their sensitive biometric data. Ignoring backlash over its unlawful biometric data collection practices, Facebook continues to roll out new products using facial recognition technology. Specifically, in June 2015, Facebook introduced a new mobile application, called Moments, that purports to allow Facebook users to more easily share photographs taken on users' mobile devices.  This application also uses Facebook's proprietary facial recognition technology to extract biometric identifiers (including their face geometry) from photographs taken

---

[6] Facebook has not disclosed whether it will sell or lease its enormous database of faceprints to other companies for their facial recognition programs. *See, e.g.*, *Facebook Hit With Tough Questions On Facial Recognition In Senate Hearing*, VentureBeat, *available at* http://venturebeat.com/2012/07/18/facebook-hit-with-tough-questions-on-facial-recognition-in-senate-hearing/ (last visited Aug. 24, 2015).

on a users' mobile device and identify others in those pictures. Facebook does not offer Moments in the Europe Union because of regulators' concerns about its facial recognition technology.

## IV. Plaintiffs' Experiences

### A. Plaintiff Adam Pezen's Experience

32. Plaintiff Adam Pezen has been a Facebook user since 2005. Since then, Pezen has uploaded photographs to his account that include images of his face and has been tagged in many of them. Pezen has also been tagged in photographs uploaded by other Facebook members without his knowledge or consent.

33. Pezen never consented, agreed, or gave permission – written or otherwise – to Facebook to collect or store his biometric identifiers. Further, Pezen was never provided with nor ever signed a written release allowing Facebook to collect or store his biometric identifiers.

34. Facebook never informed Pezen by written notice or otherwise that he could prevent Facebook from collecting, storing or using his biometric identifiers.

35. Likewise, Pezen was never provided with an opportunity to prohibit or prevent Facebook from collecting, storing or using his biometric identifiers.

36. Nevertheless, when Pezen uploaded photographs to his account and made them his profile pictures, and also when he was tagged in photographs by other Facebook members without his knowledge or consent, Facebook extracted from those photographs a unique faceprint or "template" for him containing his biometric identifiers, including his facial geometry, and identified who he was. Facebook subsequently stored Pezen's biometric identifiers in its databases.

37. As a result of Facebook's unauthorized collection and use of Pezen's biometric identifiers, Pezen was deprived of his control over that valuable information. By depriving him of his control over this valuable information, Facebook misappropriated the value of his biometric identifiers.

38. Pezen has additionally suffered damages in the diminution in value of his sensitive biometric identifiers.

**B.      Plaintiff Carlo Licata's Experience**

39.      Plaintiff Carlo Licata has been a Facebook user since 2009. Since then, Licata has uploaded photographs to his account – including those used for his profile pictures – and has been tagged in photographs by friends.

40.      Licata never consented, agreed, or gave permission – written or otherwise – to Facebook to collect or store his biometric identifiers. Further, Licata was never provided with nor ever signed a written release allowing Facebook to collect or store his biometric identifiers.

41.      Facebook never informed Licata by written notice or otherwise that he could prevent Facebook from collecting, storing or using his biometric identifiers.

42.      Likewise, Licata was never provided with an opportunity to prohibit or prevent Facebook from collecting, storing or using his biometric identifiers.

43.      Nevertheless, when Licata uploaded photographs to his account and made them his profile pictures and also when he was tagged in photographs, Facebook extracted from those photographs a unique faceprint or "template" for him containing his biometric identifiers, including his facial geometry, and identified who he was. Facebook subsequently stored Licata's biometric identifiers in its databases.

44.      As a result of Facebook's unauthorized collection and use of Licata's biometric identifiers, Licata was deprived of his control over that valuable information.  By depriving him of his control over this valuable information, Facebook misappropriated the value of his biometric identifiers.

45.      Licata has additionally suffered damages in the diminution in value of his sensitive biometric identifiers.

**C.      Plaintiff Nimesh Patel's Experience**

46.      Plaintiff Nimesh Patel has been a Facebook user since at least 2008. Since then, Patel has uploaded photographs to his account and has been tagged in photographs by friends.

47.      Patel never consented, agreed, or gave permission – written or otherwise – to Facebook to collect or store his biometric identifiers. Further, Patel was never provided with nor ever signed a written release allowing Facebook to collect or store his biometric identifiers.

48. Facebook never informed Patel by written notice or otherwise that he could prevent Facebook from collecting, storing or using his biometric identifiers.

49. Likewise, Patel was never provided with an opportunity to prohibit or prevent Facebook from collecting, storing or using his biometric identifiers.

50. Nevertheless, when Patel uploaded photographs to his account and when he was tagged in photographs, Facebook extracted from those photographs a unique faceprint or "template" for him containing his biometric identifiers, including his facial geometry, and identified who he was. Facebook subsequently stored Patel's biometric identifiers in its databases.

51. As a result of Facebook's unauthorized collection and use of Patel's biometric identifiers, Patel was deprived of his control over that valuable information. By depriving him of his control over this valuable information, Facebook misappropriated the value of his biometric identifiers.

52. Patel has additionally suffered damages in the diminution in value of his sensitive biometric identifiers.

## CLASS ALLEGATIONS

53. **Class Definition**: Plaintiffs Pezen, Licata, and Patel bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals, defined as follows:

> All persons who had their biometric identifiers, faceprints, or face templates collected, captured, received, or otherwise obtained by Facebook while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

54. **Numerosity**: The exact number of Class members is unknown to Plaintiffs at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers from at least thousands (and potentially even millions) of individuals who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

55. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include the following:

    (a) whether Facebook collected, captured, received, or otherwise obtained Plaintiffs' and the Class's biometric identifiers;

    (b) whether Facebook properly informed Plaintiffs and the Class that it collected, used, and stored their biometric identifiers;

    (c) whether Facebook obtained a written release (as defined in 740 ILCS 14/10) from Plaintiffs and the Class to collect, capture, or otherwise obtain their biometric identifiers;

    (d) whether Facebook has sold, leased, traded, or otherwise profited from Plaintiffs' and the Class's biometrics identifiers;

    (e) whether Facebook had and made available to the public, a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers in compliance with the BIPA; and

    (f) whether Facebook's violations of the BIPA were committed intentionally, recklessly, or negligently.

56. **Typicality**: Plaintiffs' claims are typical of the claims of all other members of the Class. Plaintiffs and the Class members sustained substantially similar damages as a result of Defendant's uniform wrongful conduct, based upon the same transactions that were made uniformly with Plaintiffs and the Class.

57. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting

complex class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class, and Defendant has no defenses unique to Plaintiffs.

58. **Policies Generally Applicable to the Class**: Defendant has acted or failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible conduct towards the Class.

59. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain the cost of such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint, and present a tremendous burden for the courts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be achieved.

**FIRST CAUSE OF ACTION**

**Violation of 740 ILCS 14/15(b)**
**(On Behalf of Plaintiffs and the Class)**

60. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

61. The BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier . . . unless it first: (1) informs the subject . . . in writing that a biometric identifier . . . is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; ***and*** (3) receives a

written release executed by the subject of the biometric identifier . . . ." 740 ILCS 14/15(b) (emphasis added).

62.  Facebook is a Delaware corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

63.  As explained in detail in Section III, above, Plaintiffs' and the Class's faceprints or face geometry are "biometric identifiers" pursuant to 740 ILCS 14/10.

64.  Facebook systematically and automatically collected, used, and stored Plaintiffs' and the Class's biometric identifiers without first obtaining the specific written release required by 740 ILCS 14/15(b)(3).

65.  As explained in Section III.A, Facebook did not properly inform Plaintiffs or the Class in writing that their biometric identifiers were being collected and stored, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)–(2).

66.  By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers as described herein, Facebook violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

67.  On behalf of themselves and the Class, Plaintiffs seek: (i) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Facebook to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers; (ii) statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CAUSE OF ACTION**

**Violation of 740 ILCS 14/15(a)**
**(On Behalf of Plaintiffs and the Class)**

68.  Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

69. Section 15(a) of the BIPA requires that any "private entity in possession of biometric identifiers . . . must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers . . . when the initial purpose for collecting or obtaining such identifiers . . . has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

70. For users who do not opt-out of Tag Suggestions, Facebook does not publicly provide a retention schedule or guidelines for permanently destroying their biometric identifiers as specified by the BIPA. *See* 740 ILCS 14/15(a).

71. Accordingly, on behalf of themselves and the Class, Plaintiffs seek: (i) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Facebook to establish and make publicly available a policy for the permanent destruction of biometric identifiers compliant with 740 ILCS 14/15(a); (ii) statutory damages of $5,000 per intentional or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Pezen, Licata, and Patel, on behalf of themselves and the Class, respectfully request that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Pezen, Licata, and Patel as representatives of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Facebook's actions, as set out above, violates the BIPA, 740 ILCS 14/1, *et seq.*;

C. Awarding statutory damages of $5,000 per intentional or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS 14/20(1);

1  D.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an order requiring Facebook to collect, store, and use biometric identifiers in compliance with the BIPA;

4  E.  Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

6  F.  Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

8  G.  Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

DATED: August 28, 2015

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DAVID W. HALL

s/Shawn A. Williams
SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
STUART A. DAVIDSON
MARK DEARMAN
CHRISTOPHER C. MARTINS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

|   |                                         |
|---|-----------------------------------------|
| 1 |                                         |
| 2 | LABATON SUCHAROW LLP<br>JOEL H. BERNSTEIN |
| 3 | CORBAN S. RHODES<br>ROSS M. KAMHI |
| 4 | 140 Broadway, 34th Floor<br>New York, NY  10005 |
| 5 | Telephone:  212/907-0700<br>212/818-0477 (fax) |
| 6 | EDELSON PC |
| 7 | JAY EDELSON<br>ALEXANDER T. H. NGUYEN |
| 8 | 350 North LaSalle Street, 13th Floor<br>Chicago, IL  60654 |
| 9 | Telephone:  312/589-6370<br>312/589-6378 (Fax) |
| 10 |                                        |
| 11 | Interim Co-Lead Counsel for Plaintiff |

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 28, 2015.

                                              s/ Shawn A. Williams
                                              SHAWN A. WILLIAMS

ROBBINS GELLER RUDMAN
  & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: shawnw@rgrdlaw.com

1070297_1

# Mailing Information for a Case 3:15-cv-03748-MEJ Licata v. Facebook, Inc.

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Rafey S. Balabanian**
  rbalabanian@edelson.com

- **Jay Edelson**
  jedelson@edelson.com

- **Lauren R Goldman**
  lrgoldman@mayerbrown.com

- **J. Dominick Larry**
  nlarry@edelson.com

- **James Dominick Larry**
  nlarry@edelson.com,cdore@edelson.com

- **David Ira Mindell**
  dmindell@edelson.com

- **John Nadolenco**
  jnadolenco@mayerbrown.com,los-docket@mayerbrown.com,jaustgen@mayerbrown.com

- **Archis A. Parasharami**
  aparasharami@mayerbrown.com

- **Benjamin Harris Richman**
  brichman@edelson.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Vincent           J. Connelly
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

Facebook Inc.
Cooley LLP
3000 El Camino Real
Five Palo Alto Square
Palo Alto, CA 94306-2155
```